UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WHOLESALER EQUITY DEVELOPMENT CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PETER BARGREEN and CROWN DISTRIBUTING COMPANY OF EVERETT, INC., a Washington corporation,<br><br>Defendants. | Case No. C20-1095RSM<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff Wholesaler Equity Development Corporation ("Wedco")'s Motion for Preliminary Injunction. Dkt #8. Defendants Peter Bargreen and Crown Distributing Company of Everett, Inc. ("Crown of Everett") oppose. Dkt. #15. The Court has determined that oral argument is unnecessary. The Court has reviewed the briefing and supplemental briefing and now rules that Wedco's Motion for Preliminary Injunction is GRANTED as set forth below.

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 1

## II. BACKGROUND

This case concerns alleged mismanagement at Crown LLC, a business created by Plaintiff Wedco and Defendant Crown of Everett to distribute Anheuser-Busch products in certain counties in northwestern Washington. Dkt. #9 ("West Decl."), ¶ 3 and Ex. A Operating Agreement ("Op. Agmt.") at 1. Peter Bargreen is the sole owner of Crown of Everett. *Id.* at ¶ 5. Wedco is a wholly owned subsidiary of Anheuser-Busch Companies, LLC. *Id*. at ¶ 4. Through Crown of Everett, Peter Bargreen owns 51% of Crown LLC, while Wedco holds the other 49%. Op. Agmt. at § 5.1(a). Under the Operating Agreement, signed in June of 2010, the day-to-day operations of Crown LLC are entrusted to a "Manager"—Peter Bargreen. *Id*. at § 4.1 and § 4.4. However, Wedco as minority owner retains some power over the Manager— the Operating Agreement states: "[a]t the request of Wedco . . . the Manager shall be removed if 'Cause' for such removal exists." *Id*. at § 4.5(a). "Cause" includes "fraud or intentional misconduct on the part of the Manager." *Id.* at § 4.4.

In connection with the formation of Crown LLC, it appears Peter Bargreen bought out the ownership interests in Crown of Everett of his brother (John Bargreen) and two cousins (Gigi Burke and Gregory Blunt). Dkt. #11 ("Norton Decl."), Ex. A ¶ 3.2, Ex. B ¶¶ 3.1-3.2, 3.8- 3.9.) As part of the buyout, Peter Bargreen entered into promissory notes with his three relatives for several million dollars. *Id.*

By 2017, Crown LLC had fallen behind on payments to Craft Brew Alliance, a supplier, and entered into an agreement where past-due payments accrued interest at 6%. West Decl. at ¶¶ 22 and 23. As a result and in connection with Wedco's consent to a new line of credit for Crown LLC, Wedco, Crown of Everett, and Peter Bargreen entered into a Letter Agreement (the "2018 Letter Agreement") that restricted Peter Bargreen's permission as manager to cause

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 2

Crown LLC to make distributions other than for two limited purposes: (1) to cover monthly taxes the members expected to owe for amounts imputed to them for the preceding month because of their ownership of Crown LLC, and (2) to reimburse "reasonable and ordinary business expenses" Crown of Everett incurred for operation and oversight of Crown LLC. West Decl. at ¶ 25 and Ex. B.

In early 2019, John Bargreen sued his brother Peter Bargreen as well as Crown of Everett in Snohomish County Superior Court. Norton Decl. at Ex. A. John Bargreen alleged that Peter Bargreen failed to pay over $2 million owed him for his ownership interest in Crown of Everett. *Id.* at ¶ 3.5. John also alleged that he sold his interest in Crown of Everett because Peter was accused of "stealing from the company." *Id.* at ¶ 3.2. A few months later, Crown of Everett was sued by Gigi Burke and Gregory Blunt, Peter Bargreen's cousins. Norton Decl. at Ex. B. Like John Bargreen, Ms. Burke and Mr. Blunt each claimed that Peter Bargreen had failed to pay over $2 million owed for their stakes in Crown of Everett. *Id.* at ¶¶ 3.1-3.2, 3.8-3.9. Crown of Everett did not respond to the complaint. Norton Decl. at Exs. C-D (default judgments). On July 23, 2019, the Snohomish County Superior Court entered judgments against Crown of Everett in the Burke and Blunt cases totaling $4.9 million. *Id.* That same day, Ms. Burke and Mr. Blunt moved for a charging order to require Crown LLC to pay any distributions due to Crown of Everett directly to the cousins until the judgments were satisfied. Norton Decl. at Ex. E. The Court granted the motion a week later. Norton Decl. at Ex. F. The lawsuits brought by Peter Bargreen's family members resulted in judgments against Crown of Everett in excess of $7 million.

On July 23, 2019, the same day as the charging order, Peter Bargreen as Manager directed Crown LLC to make a distribution of $343,137, roughly half ($175,000) of which was

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 3

distributed to his company. West Decl., ¶¶ 26–27. Typical distributions previously had been about $10,000. The July 23rd distribution exceeded the total amount of distributions made by Crown LLC in all of 2018. *Id.* at ¶ 29.

Wedco noticed the large distribution and emailed Michael Lowenson, then Crown LLC's Vice President of Finance, copying Peter Bargreen, to ask why the July distribution was so large. West Decl. at ¶ 31 and Ex. D. Aware of the terms of the 2018 Letter Agreement that limited distributions, Mr. Lowenson replied that the amount was "based on Peter's tax estimate from our CPAs." West Decl. at Ex. D. Wedco alleges that neither Mr. Lowenson nor Peter Bargreen ever provided evidence to support this assertion. Instead, Peter Bargreen sent Wedco a letter he obtained from his CPA stating he owed $160,000 in back taxes for 2018. West Decl. at ¶¶ 36-38. Because the 2018 Letter Agreement permitted distributions to the members to allow "the members to pay taxes reasonably anticipated to be payable by them as a result of the income imputed to them for the preceding month because of their ownership…" Wedco believed that Peter Bargreen had breached the 2018 Letter Agreement and attempted to cover it up. In any event, Peter Bargreen was not permitted under the Operating Agreement to use company funds to pay his back taxes. Wedco suspects that the timing of this distribution and the default judgments and charging order against him was no coincidence. *See* Dkt. #8 at 8.

On November 7, 2019, Wedco attempted to invoke its right under the Operating Agreement to remove Peter Bargreen as Manager. West Decl. at ¶ 41 and Ex. E at 2. Wedco's letter to Peter stated:

> It is now clear that you caused Crown LLC to make the July 23rd distribution because your creditors would almost certainly receive any distributions after that date. When we raised questions, you attempted to cover up your actions through evasive and incomplete responses. Taken together, your decision to remove money from the wholesalership to which you were not entitled, compounded by

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 4

> evasive responses and attempts to cover up what had happened in an effort to lead us to believe that the distribution was proper, and the continued stonewalling provides sufficient Cause under Section 4.4 of the Operating Agreement for your immediate removal as Manager.

*Id.*

Wedco exercised its right to examine the books and records of Crown LLC in late December 2019. Dkt. #10 ("Schlechte Decl."), ¶ 5; West Decl at ¶ 11; Op. Agmt. § 7.1(a) (providing Wedco inspection rights). On March 10, 2020, Wedco notified Peter Bargreen of its findings:

> Our examination of Crown LLC's records uncovered that you have misappropriated in excess of $400,000 in Crown LLC funds to pay for personal expenses for you and your family since at least June 2016.
>
> ….
>
> A review of Crown LLC credit card statements indicates that you have also misused company funds for personal expenses that were not recorded in the Employee A/R account—but instead appear to have been improperly included as operating expenses in Crown LLC's income statements.

West Decl. at Ex. I. The letter also accused Peter Bargreen of improperly employing his relatives without disclosing this to Wedco. Peter did not respond to this letter. However, in response to the instant Motion, Mr. Bargreen disputes many of the accusations. *See* Dkt. #17 ("Bargreen Decl."). For example, Mr. Bargreen states:

> [Plaintiff] says I used company funds to pay for personal travel on private jets totaling $307,000. The trips in question were business trips, as detailed in Exhibit A. More generally, I have not misappropriated any funds from Crown. The confusion stems from the fact that, unbeknownst to me, my business expenses were erroneously booked as employee accounts receivables. In reviewing the situation, it appears this resulted from two successive bookkeepers who were let go for non-performance. I believe that our current record keeping is being done correctly.

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 5

Bargreen Decl. at ¶ 18.

During early 2020, Wedco repeatedly attempted to get Peter to consent to the appointment of a new Manager and he repeatedly did not respond. *See* West Decl. at ¶ 47. Instead, he continued to perform many of the functions reserved for the Manager.

Section 11.1(f) of the Operating Agreement grants a non-defaulting member the authority to appoint a liquidating trustee "upon a material default by a Member in the performance of the Agreement" that is not cured in thirty days. On July 15, 2020, Wedco exercised its right under the Operating Agreement to appoint a liquidating trustee to assume the position of Manager under the Operating Agreement and wind up the business as a result of Peter Bargreen's alleged breaches of contract. West Decl. at ¶¶ 64-65 and Exs. K, L, and M. Mr. Bargreen subsequently refused to permit the liquidating trustee to enter Crown LLC's premises and refused to recognize the liquidating trustee's authority. Dkt. #12 ("Kaestle Decl.") at ¶¶ 9, 10, 12, 13; West Decl. at ¶ 65.

Based on all of the above, Wedco filed this instant action in July of 2020 alleging breach of the Operating Agreement, breach of the 2018 Letter Agreement, breach of the implied duty of good faith and fair dealing, breach of fiduciary duty, improper distribution under RCW § 25.15.236, unjust enrichment, conversion, and fraud. Dkt. #1.

The instant Motion soon followed. Wedco is requesting the Court preliminarily enjoin Peter Bargreen and Crown of Everett from acting as Manager as defined by the Operating Agreement or from interfering with the liquidating trustee's assumption of the role of Manager and winding-down of the business. Dkt. #8 at 24.

//

//

## III. LEGAL ANALYSIS

Granting a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). A party can obtain a preliminary injunction by showing that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Id*. at 555 U.S. 20. A preliminary injunction may also be appropriate if a movant raises "serious questions going to the merits" and the "balance of hardships . . . tips sharply towards" it, as long as the second and third *Winter* factors are satisfied. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

### A. Likelihood of Success on the Merits

A breach of contract claim requires the following: (1) the contract imposes a duty; (2) the duty is breached; and (3) the breach proximately causes damage to the plaintiff. *Nw. Indep. Forest Mfrs. V. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112, 323 P.3d 1036 (2014) (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). At this early stage in the proceedings, and based solely with what is currently on the record, the Court finds Wedco has made a clear showing that it is likely to succeed on the merits of its contract claims. Wedco has presented sufficient evidence that Peter Bargreen engaged in at least some self-dealing in violation of explicit terms of the Operating Agreement (*e.g.*, by

possessing company funds for a non-company purpose), refused to allow a new manager to be named as required by the Operating Agreement, and violated the 2018 Letter by distributing ten times more funds than would normally be permitted, $175,000 of which went to himself. All of this could clearly damage Wedco. That Wedco initially took no action when it received an unusually large disbursement or otherwise took many months to act on the above breaches does not significantly reduce their likelihood of succeeding on these claims. The Court agrees with Wedco that "Defendants do not seriously contest that at least some of Mr. Bargreen's conduct intentionally breached the Operating Agreement." Dkt. #23 at 4.

Peter Bargreen, as an LLC manager, also owes Wedco fiduciary duties. *Nelson v. Pryor*, 2018 WL 1611624, at *9 (Wash. Ct. App. Apr. 3, 2018) (citing *Bishop of Victoria Corp. Sole v. Corporate Bus. Park, LLC*, 158 P.3d 1183, 1190 (Wash. Ct. App. 2007)). Mr. Bargreen owes the "duties of loyalty and care." RCW 25.15.038(1)(a). The duty of loyalty "requires a fiduciary to avoid secret profits, self-dealing, and conflicts of interest," *Nelson*, 2018 WL 1611624, at *9 (quoting *Horne v. Aune*, 121 P.3d 1227, 1235 (Wash. Ct. App. 2005) (emphasis added)), and to account for "any property, profit, or benefit" the manager derives from the Company, RCW 25.15.038(2)(a). The Court finds that Wedco has made a clear showing that it is likely to succeed on the merits of its breach of fiduciary duty claim. Mr. Bargreen does not explicitly address his fiduciary duty in his Response brief, and like the claim that at least certain of his alleged conduct breached the Operating Agreement, he focuses on only some of his conduct, letting other accusations of breaches of fiduciary duty slip through the cracks. *See* Dkt. #15 at 21. The overall picture at this early stage of the litigation is of a Manager repeatedly breaching his fiduciary duty to the minority owner by self-dealing and attempting to cover it up.

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 8

The Court notes that the alleged breaches of the Operating Agreement and fiduciary duties owed to Wedco would almost certainly constitute "cause" for removal of Mr. Bargreen as manager. As the Court reads the Operating Agreement, Wedco has the right to remove the manager for "cause," and Mr. Bargreen has the right to contest that removal in a court such as this one. To read the contract any other way would render this clause meaningless.

The Court need not address the remainder of Wedco's claims for likelihood of success, *e.g.* fraud and conversion, finding that the requested relief is supported by the above. Such claims can be the subject of future motions or trial.

**B. Irreparable Harm**

Wedco argues that "a bargained-for minority right to participate in corporate management has value in and of itself and a denial of that right, without more, can give rise to irreparable harm." Dkt. #8 at 21 (citing *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 115 (2d Cir. 2003)). Wedco cites to one other case for the proposition that "a loss of bargained-for managerial control over an entity constitutes irreparable harm." *Id.* at 22 (citing *Audubon Levy Investors, LP v. East West Realty Ventures, LLC*, 698 F. Supp. 2d 328, 332 (E.D.N.Y. 2010)). These two cases, cited again on Reply, form the nexus of Wedco's legal basis for arguing that the instant circumstances risk irreparable harm.

In Response, Mr. Bargreen argues that Wedco has delayed ten months in filing this motion since it knew about his behavior and that this suggests "the harm is not serious enough to justify a preliminary injunction." Dkt. #15 at 21. He goes on to argue that the right to terminate him as manager was not "self-executing."

Given the extremely limited argument on this topic, the Court nevertheless finds that Wedco's inability to execute its minority right to remove Mr. Bargreen as Manager can

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 9

constitute irreparable harm. For example, the Court can imagine how business relationships could be damaged in ways that could not be compensated for at the end of this case. The Court also questions how the business dealings between the parties can possibly proceed given the standoff caused by this litigation and the risk of further breaches of the Operating Agreement. This factor is satisfied.

### C. Balance of Equities

Wedco argues that "[a] preliminary injunction would simply mean that the parties proceed under the terms of the contract to which they agreed," and that "denying that relief would enable Peter Bargreen to continue his misconduct and leave Wedco at his mercy." Dkt. #8 at 23. Wedco argues that a wind down of Crown LLC will benefit both members—Wedco and Crown of Everett.

Peter Bargreen argues that "plaintiff is the subsidiary of a multi-billion-dollar, multinational corporation" and that "Defendant is a third-generation family business." Dkt. #15 at 22. Mr. Bargreen asserts that if the Court grants the instant Motion, his ownership of Crown LLC "will disappear" and that the distribution rights "will be sold for little or nothing…" *Id*.

On Reply, Wedco argues that Mr. Bargreen is relying on speculation that the distribution rights will be sold for little or nothing and that the Operating Agreement and liquidating trustee's engagement letter require a liquidation to receive maximum value. Dkt. #23 at 13.

The Court does not have the complete picture of this case. Given what has been submitted, the Court finds that the balance of equities leans more toward Wedco as the minority owner attempting to enforce its rights to prevent clearly identified misconduct from continuing.

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 10

### D. The Public Interest

Neither party presents a strong argument as to the public interest. Wedco argues that the public's interest is found in enforcing contracts like the Operating Agreement, Dkt. #8 at 24, while Mr. Bargreen speculates only that "at least 50 people employed by Crown will likely lose their jobs…. due to redundancies." Dkt. #15 at 23. Wedco has presented a compelling argument that Crown LLC is likely to be "rendered insolvent" or "dismantle[d]" by Mr. Bargreen himself. *See* Dkt. #23 at 13. The public is likely not concerned with the enforcement of the Operating Agreement or 2018 Letter Agreement, and the discussion of jobs relies on pure speculation from both parties. The Court finds that this factor does not weigh strongly in favor of either party, but tilts slightly in favor of Wedco.

The Court finds that Wedco has made a clear showing that its requested relief is warranted and the test from *Winter v. NRDC* is satisfied.

### E. Rule 65(c) Security

Federal Rule of Civil Procedure 65(c) provides that the Court may grant a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Wedco argues that a bond is unnecessary in this case, citing *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) for the proposition that courts "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Wedco reiterates that "if the liquidating trustee is allowed to proceed, Crown of Everett (and thus Peter Bargreen) will be fairly compensated for its interests in Crown LLC." Dkt. #8 at 24. Mr. Bargreen does not address this issue. The Court finds that bond is unnecessary.

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 11

## IV. CONCLUSION

Having considered the briefing from the parties and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff's Motion for Preliminary Injunction, Dkt. #8, is GRANTED.

2. The Court preliminarily enjoins Peter Bargreen and Crown of Everett from making decisions reserved for the Operating Agreement Manager of Crown LLC or otherwise holding Peter Bargreen out as the Manager.

3. The Court preliminary enjoins Peter Bargreen and Crown of Everett from interfering with the liquidating trustee's assumption of the role of Manager and wind-down of the business in accordance with the terms of the Operating Agreement.

4. This Order shall remain in effect until the close of this case, unless otherwise ordered by the Court.

5. Bond is not required at this time.

DATED this 1st day of February, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE